In the District Court of the United States
For The District of South Carolina
BEAUFORT DIVISION

RECEIVED
USDC CLERK, CHARLESTON, SC
2006 JUN 13 A 11: 55

| | |
|---|---|
| Reginald Dicks, *aka*, Reginald A. Dicks, #229263, <br><br> Plaintiff, <br><br> vs. <br><br> Arenda Thomas, Captain at Lee Correctional Institution; NFN Nessman, Captain at Lee Correctional Institution; Calvin Anthony, Warden of Lee Correctional Institution; and Grievance Personnel, <br><br> Defendants. | Civil Action No. 9:05-3091-HFF-GCK <br><br> **REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE** |



## I. INTRODUCTION

The *pro se* Plaintiff, Reginald Dicks, *aka*, Reginald A. Dicks ("Plaintiff" or "Dicks"), an inmate incarcerated in Lee Correctional Institution ("LCI") at the time of the events leading to this action. Plaintiff has filed suit pursuant to Title 42, United States Code Section 1983, alleging he was wrongfully convicted of an institutional offense and subsequently assessed a loss of six hundred twenty (620) days of accumulated good time and placed in a Special Management Unit ("SMU"). Pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d), D.S.C., the undersigned United States Magistrate Judge is authorized to review pretrial matters in prisoner cases filed under 42 U.S.C. § 1983, and submit findings and recommendations to the District Court.

## II. *PRO SE* COMPLAINT

Plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978).

Under established local procedure in this judicial district, a careful review has been made of the *pro se* complaint herein pursuant to the procedural provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, § 104, 110 Stat. 1214. This review has been conducted in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

*Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes*, 449 U.S. at 8. Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal. The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986). The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Social Services*, 901 F.2d 387 (4th Cir. 1990).

### III. HISTORY OF THE CASE

The Plaintiff commenced this Section 1983 action on October 27, 2005[1] against the defendants Arenda Thomas, Captain at LCI ("Thomas"), NFN Nessman, Captain at LCI ("Nessman"), Calvin Anthony, Warden of LCI ("Anthony"); and un-named and un-identified

---

[1] Plaintiff has the benefit of the holding of *Houston v. Lack*, 487 U.S. 266 (1988) with respect to the "delivery" date of his Complaint. *See* this court's Order [4-1] at p. 1, n.2.

Grievance Personnel. Plaintiff seeks to reverse his institutional conviction for hostage taking, restore all good time credit, and be released from SMU and returned to the general prison population. He also seeks damages and reimbursement of his court fees.

This case stems from an incident that occurred on October 29, 2003, while Plaintiff was incarcerated at LCI. Plaintiff states in his complaint that two inmates "somehow ended up" with keys and opened all of the doors inside the Plaintiff's unit, and "two correctional officers . . . were left stranded inside the unit."[2] Backup was called, and eventually, Plaintiff and six other inmates were apprehended and immediately transferred to Kirkland Correctional Institution.

On November 3, 2003, Defendant Nessman a held a disciplinary hearing with respect to Plaintiff's charge of hostage-taking. Defendant Thomas had filed the charge, and Plaintiff complains that Defendant Thomas testified at the disciplinary hearing by telephone, and his testimony did not correspond with the narrative in Defendant Thomas' incident report written immediately after the incident. Apparently, Defendant Thomas' testimony did not specifically mention the videotape that had been referred to in the incident report.



Defendant Nessman found Plaintiff guilty of the infraction of hostage-taking, and as a sanction for this offense, Plaintiff was assessed a loss of earned good time credits and placed in security detention in the SMU.

Plaintiff claims that he filed a grievance appealing the decision of Defendant Nessman and his grievance was denied at the Step 1 level by Defendant Anthony. Plaintiff contends he filed a Step 2 grievance, but Defendant Anthony's decision was upheld.

Defendants, by brief, explain that on October 29, 2003, Plaintiff was involved in an incident at Lee Correctional Institution and charged with hostage taking by Defendant Thomas. On November 3, 2003, the Plaintiff was convicted of that institutional offense and assessed a loss of six hundred twenty (620) days of accumulated good time credit and placed in the SMU. The

---

[2] See Complaint [1-1] at page 3.

Defendants deny that any of Plaintiff's constitutional rights have been violated by Defendants Thomas, Nessman or Anthony. Furthermore, the Defendants contend that this action is not properly before the court because Plaintiff has failed to show that he has exhausted his available remedies by means of a habeas corpus action.

## IV. PROCEDURAL HISTORY IN FEDERAL COURT

On November 7, 2005, Plaintiff commenced this Section 1983 action against the Defendants. [1-1] On January 6, 2006, the Defendants filed an Answer to the Complaint and on February 14, 2006, a Motion for Summary Judgment and Memorandum in Support was filed. [9-1; 12-1] The undersigned issued an Order on February 21, 2006, the undersigned issued an Order, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), which notified Plaintiff of the Defendants' Motion, the dismissal procedure and the possible consequences if Plaintiff failed to adequately respond to the Defendants' Motion within thirty-four (34) days. [13-1]



On March 7, Plaintiff filed a Motion for Discovery and a Motion to stay the *Roseboro* order until he received responses to his discovery. [15-1] The undersigned issued an Order on March 9 denying Plaintiff's Motion for Discovery and Motion to Stay. [16-1] Also on March 9, 2006, the Plaintiff filed a response in opposition to the Defendants' Motion for Summary Judgment and on March 17, 2006, the Plaintiff filed a second Responding Brief in opposition to the Defendants' Motion for Summary Judgment. [17-1; 18-1] A Reply was filed by the Defendants on March 24, 2006 to the Plaintiff's second Responding Brief. [19-1]

On April 21, 2006, Plaintiff appealed the undersigned's order denying discovery to the District Court. [20-1] The District court ordered that the Defendants respond to Plaintiff's motion, and Defendants' response was filed on May 12, 2006. [21-1; 22-1] ] On May 31, the District Court affirmed the undersigned Magistrate Judge's decision and denied Plaintiff's appeal. [23-1]

## VI. THE STANDARD FOR DETERMINING A MOTION FOR SUMMARY JUDGMENT

The Defendants' Motion for summary judgment is governed by the holding in *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

It is important to add that unsupported speculation by a non-moving party is insufficient to defeat a summary judgment motion. *Felty v. Graves-Humphreys Co.*, 818 F. 2d 1126 (4th Cir. 1987). Similarly, genuine disputes of material facts are not demonstrated by the bald statements of a non-moving party in affidavits or depositions. *Stone v. University of Md. Medical Sys. Corp.*, 855 F. 2d 167 (4th Cir. 1988).

For purposes of evaluating the appropriateness of summary judgment, this court must construe the facts are set forth in the light most favorable to Plaintiff. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("[O]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.") (internal quotation marks omitted); Fed.R.Civ.P. 56(c) (Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.").



When, as in the present case, the Defendants are the moving party, and the Plaintiff has the ultimate burden of proof on an issue, the Defendants must identify the parts of the record that demonstrate the Plaintiff lacks sufficient evidence. The nonmoving party, then, must then go

beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

## VII. DISCUSSION

### A. Whether Plaintiff's Cause of Action Concerning th Disciplinary Charges Brought Against Him and the Disciplinary Hearing Are Cognizable Under Section 1983

Plaintiff's Complaint focuses on the hostage-taking charges brought against him by Defendant Thomas and the subsequent disciplinary hearing held before Defendant Nessman on November 3, 2003. In his Complaint, Plaintiff does not specifically deny his participation in the hostage-taking, but he does contest the procedures utilized in the disciplinary hearing, claiming that Defendant Thomas's incident report stated that he observed the Plaintiff on videotape, but at the hearing, Thomas stated that he "witnessed the Plaintiff participating in the incident."[3] While the undersigned notes that this may be a distinction without a difference, Plaintiff finds this perceived discrepancy to be of particular importance. Further, Plaintiff alleges that at the hearing, Defendant Thomas could not or would not give a physical description of him.[4] Finally, Plaintiff alleges that Defendant Nessman found him guilty of the offense of hostage taking although the videotape was not produced at the hearing.[5] Plaintiff views the actions of Defendants Thomas and Nessman as "a railroaded conviction on hostage taking."[6]



As a result of the disciplinary conviction, the Plaintiff was assessed a loss of his good time accumulated, in the total amount of 620 days.[7] Plaintiff appears to seek two forms of relief: the restoration of the lost good-time credits, and monetary damages based on the allegedly

---

[3]   *See* Complaint at page 3.

[4]   *See* Complaint at page 4.

[5]   *See* Complaint at pages 3-4.

[6]   *See* Complaint at page 2.

[7]   *See* Complaint at Exhibit 1.

Page 6 of 14

unconstitutional procedure used to deprive him of the credits.[8] However, neither form of relief is available. Pursuant to the United States Supreme Court's decision in *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973), a prisoner seeking the restoration of good time credits may only do so by way of a petition for writ of habeas corpus.

In addition, the Plaintiff cannot proceed on his claim for monetary damages for the alleged deprivation of good time credits without due process of law because, if proven, the Plaintiff's allegations would necessarily imply the invalidity of his disciplinary conviction, and Plaintiff's claim for monetary damages is not cognizable under Section 1983. *See Heck v. Humphrey*, 512 U.S. 477, 487 (1994). In *Heck v. Humphrey*, the United States Supreme Court held in that a state prisoner's claim for damages is not valid under Section 1983 if "judgment in favor of the Plaintiff would necessarily imply the invalidity of his conviction or sentence," unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated.

The Supreme Court subsequently extended this ruling in *Edwards v. Balisok*, 520 U.S. 641 (1997) to a prisoner's claims for damages regarding a loss of good time credits allegedly resulting from the state's use of constitutionally invalid disciplinary procedures. As the Supreme Court explained, an inmate's claim for "declaratory relief and money damages, based on allegations of deceit and bias on the part of the decision maker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983." *Edwards v. Balisok*, 520 U.S. at 648.



More recently, in *Wilkinson v. Dotson*, 544 U.S. 74, 125 S.Ct. 1242, 1248 (2005), the Supreme Court explained:

> *Heck* specifies that a prisoner cannot use §1983 to obtain damages where success *would necessarily* imply the unlawfulness of a (not previously invalidated) conviction or sentence. And *Balisok* ... demonstrates that habeas remedies do not displace §1983 actions where success in the civil rights suit would not necessarily vitiate the legality of (not previously

---

[8] It appears from Plaintiff's complaint that his money damages are related to court costs, but the complaint is not entirely clear.

> invalidated) state confinement. These cases, taken together, indicate that a state prisoner's §1983 action is barred (absent prior invalidation) - no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) - *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.

Here, Plaintiff has brought his action pursuant to Section 1983 and appears to allege that Defendant Thomas produced insufficient evidence during Plaintiff's disciplinary hearing, resulting in his improper conviction by Defendant Nessman. In essence, Plaintiff is claiming that the procedural aspects of his disciplinary hearing were handled in a deficient manner. If Plaintiff were to prove that the testimony given at his disciplinary hearing were insufficient for conviction, then it would follow that the disciplinary process that resulted in the revocation of his good time credits is invalid, and he would be entitled to restoration of those good time credits. *See Edwards v. Balisok*, 520 U.S. at 647.

In evaluating the Plaintiff's claim in this action, it is clear that a favorable judgment in his favor would "necessarily imply the invalidity of his conviction or sentence." *Heck v. Humphry*, 512 U.S. 477, 487 (1994). As success for the Plaintiff in this action would result in a shorter term in prison, through the restoration of his good time credits previously taken, this case lies at "the core of habeas corpus[.]" *See Preiser v. Rodrigues*, 411 U.S. 475, 489 (1973). Accordingly, *habeas corpus*, not Section 1983, is the appropriate vehicle for his claims. *See Edwards*, 520 U.S. at 648.



### B. Whether Defendant Anthony Violated Plaintiff's Constitutional Rights by Not Granting His Grievance Requests

Plaintiff alleges in his Complaint that Defendant Anthony wrongfully upheld his disciplinary conviction when a Step 1 grievance was filed within the South Carolina Department of Corrections ("SCDC"). In addition, Plaintiff alleges that when he filed his Step 2 grievance, the disciplinary conviction was wrongfully upheld, presumably by un-named Grievance Personnel.

The fact that Plaintiff's grievance was denied and that the denial was upheld does not create a violation of his constitutional rights. Even assuming this court were to take as true Plaintiff's allegations that his grievance was improperly denied under the SCDC grievance policy, Plaintiff has failed to state that his procedural due process rights have been violated. It is well-settled that prison inmates do not have a constitutionally protected right to a grievance procedure. *See, e.g., Jones v. North Carolina Prisoner's Labor Union*, 433 U.S. 119, 138 (1977) (Burger, J. concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) ("The Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state.")(citations omitted). A prison grievance procedure does not confer any substantive right upon inmates. Therefore, it does not give rise to a protected liberty interest requiring the procedural protection provided by the Fourteenth Amendment. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

Based on the foregoing, it is clear that the Plaintiff's constitutional rights have not been violated due to the actions undertaken by prison personnel in denying his grievances.

### C. Whether Plaintiff's Constitutional Rights Have Been Violated by his Placement In SMU

Plaintiff also complains that as part of his sanction for being convicted of hostage taking, he was placed in the SMU. As part of his requested relief, he seeks his release from SMU and his return to the general population.[9] As a threshold matter, however, this court will not interfere with the decisions of SCDC administrators with respect to levels of confinement in a prison. Further, the Supreme Court refused to hold that "any substantial deprivation imposed by prison authorities triggers the procedural protections of the due process clause [because to do so] would subject to judicial review a very wide spectrum of discretionary actions that have traditionally been

---

[9] *See* Complaint at 3-5.

determined to be the business of prison administrators rather than of the Federal Courts." *Meachum v. Fano*, 427 U.S. 215, 225 (1976). As the Court has also stated:

> "Prison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security ... Such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters."

*Bell v. Wolfish*, 441 U.S. 520, 547-48 (1979). The assignment of inmates into particular units by correctional officials is a discretionary function that is not subject to review unless federal or state law places limitation on official discretion. *Hayes v. Thompson*, 726 F2d 1015, 1016-17 (4th Cir. 1984).

Although a state may create a liberty interest which is protected by the due process clause of the Fourteenth Amendment, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995); *Beverati v. Smith*, 120 F3d 500, 502-504 (4th Cir. 1997). As the Supreme Court has noted, "[l]awful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen, a retraction justified by the consideration underlying our penal system." *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974).



For an inmate to prevail on a 1983 claim that actions by state officials regarding a state inmate's security and custody classification have violated the inmate's procedural due process rights, the inmate must prove: (1) he had a protected liberty interest in receiving a new or retaining a current classification; (2) that specific interest was adversely affected by the actions of state officials; and (3) without the protections of due process guaranteed by the Fourteenth Amendment. *Slezak v. Evatt*, 21 F.3d 590, 593 (4th Cir.), *cert. denied*, 115 S.Ct. 235 (1994).

Page 10 of 14

As the Fourth Circuit noted:

> The logical first question in assessing such a claim is, therefore, whether the inmate has a protectible liberty interest in the classification he seeks either to retain (against a 'demotion') or to receive (by a 'promotion'). This, in turn raises the question of where such a liberty interest might be found. Here, again, the basics are plain. The Federal Constitution itself vests no liberty interest in inmates in retaining or receiving any particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement ... is within the sentence imposed ... and is not otherwise violative of the Constitution.' ... Within these limits, insofar as the Federal Constitution is concerned, the security and custody classification of state prison inmates is a matter for state prison official discretion whose exercise is not subject to federal procedural due process constraints.

*Id.* at 594 (internal citations omitted).

The Fourth Circuit recognized that such a liberty interest to retain or attain a particular security or custody classification may be created by state law having a very specific quality. Its effect must be to "plac[e] substantive limitations on official discretions," . . . thereby giving rise, at the limits imposed upon discretion, to "legitimate claim[s] of entitlement," . . . to the classification sought and administratively denied. *Slezak v. Evatt*, at 594. (internal citations omitted).



The South Carolina Supreme Court reviewed the question of whether state law imposes such a liberty interest for inmates in *Brown v. Evatt*, 322 S.C. 189, 470 S.E.2d 848 (1996). In that case, the Supreme Court held:

> Neither the state statutes which create and define the powers of SCDC nor SCDC's operational classification regulations create the required liberty interest. Though they provide procedural safeguards and substantive criteria for making base line classification decisions, these are made only as recommendations that are subject to discretionary review and rejection by higher level prison officials[.]

*Id.* at 195, 470 S.E.2d at 851. In *Brown*, the inmate was ruled to have no liberty interest in a security or custody classification. *Id.*

Although the Plaintiff may be dissatisfied with his custody status, it should be noted that absent a constitutional, statutory, or regulatory bar, "a prisoner may be transferred [from the general population] for any reason, or for no reason at all." *Thomas v. Ramos*, 130 F.3d 754, 760

(7th Cir. 1998). And, as *Brown v. Evatt* and *Slezak v. Evatt* make clear, there is no liberty interest in security or custody classifications within the SCDC.

## RECOMMENDATION

For the foregoing reasons, it is recommended that the **Defendants' Motion for Summary Judgment [12-1] be granted.**

George C. Kosko
United States Magistrate Judge

June 12, 2006

Charleston, South Carolina

### Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation" & The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of its service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3, (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the period for filing objections, <u>but not thereafter</u>, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.** *See* Keeler v. Pea, 782 F. Supp. 42, 43-44 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, (D.Utah 1995). Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.) 1984, *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir. 1985)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate**

> judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("Plaintiff's objections lacked the specificity to trigger *de novo* review").

**This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.** *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**
